**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA SIMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: |
| | ) | **JURY DEMAND** |
| MUNICIPAL CONSOLIDATED | ) | |
| DISPATCH, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, MARIA SIMON, by and through her attorneys, S.T. LEGAL GROUP, and, who for her Complaint against the Defendant, MUNICIPAL CONSOLIDATED DISPATCH, alleges as follows:

**NATURE OF ACTION**

1. This lawsuit arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*, for failure to accommodate, discrimination on the basis of disability, and retaliation.

**JURISDICTION**

2. Federal jurisdiction arises under the provisions of ADA, 42 U.S.C. § 12101 *et. seq.*, and federal question jurisdiction under 28 U.S.C. § 1331 and § 1343.

**VENUE**

3. Pursuant to 29 U.S.C. § 1391, venue lies in the Northern District of Illinois in that Plaintiff is a resident in this District, the Defendant is engaged in a business in this District, and a

1

substantial part of the alleged events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. At all relevant times, the Plaintiff, MARIA SIMON, was a resident of Lakemoor, County of Lake, State of Illinois.

5. At all relevant times, the Defendant, MUNICIPAL CONSOLIDATED DISPATCH (hereinafter "MCD"), was a government entity organized by an intergovernmental agreement between the Villages of Harwood Heights, Norridge, and Schiller Park with its principal places of business in Harwood Heights, Schiller Park, and Norridge, Illinois. The Defendant is engaged in the business of receiving emergency and non-emergency calls and dispatching police and fire services as appropriate to area residents.

6. In or about June 2017, the Plaintiff, MARIA SIMON, agreed to become an employee of the Defendant, MCD. Her most recent title was Emergency Communications Telecommunicator.

7. In exchange for her services, the Defendant, MCD, and Plaintiff agreed that the Plaintiff would be compensated for her services on an hourly basis and be eligible for overtime compensation.

8. At the time of hiring, the Plaintiff, MARIA SIMON, had a degenerative condition in her left knee. At the time of hiring, this condition did not require accommodation.

9. In or about March 2018, the Plaintiff, MARIA SIMON, verbally informed the Executive Director Ronald Gross of her knee condition.

10. Thereafter, the Executive Director's treatment of the Plaintiff, MARIA SIMON,

changed in that she was subjected to disparate criticism and disciplinary action for incidents that her non-disabled colleagues were not criticized or disciplined for.

11. In or about August 2019, the Plaintiff notified the Respondent, MCD, that she would require surgery and that she would be off work until she was cleared by her doctor. She was expected to be released to return to work in January 2020.

12. On or about October 18, 2019, the Plaintiff, MARIA SIMON, had surgery on her left knee to repair a degenerative condition.

13. After her October 18, 2019 surgery, the Plaintiff, MARIA SIMON, used twelve weeks of FMLA leave.

14. In or about January 2020, the Plaintiff, MARIA SIMON, notified the Defendant, MCD, that she was not cleared by her surgical physician to return to work because she was not released to drive due to pain mediations that she was taking. The Plaintiff, MARIA SIMON, requested an accommodation of leave.

15. The Defendant, MDC, granted this accommodation, however, the Executive Director Ronald Gross expressed to the Plaintiff that if she did not return by February 14, 2020, she would be deemed to have voluntarily resigned.

16. In February 2020, the Plaintiff, MARIA SIMON, was cleared to work with accommodations as follows: work no more than 40 hours per week; work no more than 8 hours per shift; time for breaks to manage pain; time for breaks to elevate leg and manage swelling; and being able to park in the handicap spot.

17. In February 2020, the Defendant, MCD, verbally granted each of these accommodations, however, when the Plaintiff, MARIA SIMON, returned to work on February

14, 2020, the Defendant frequently refused to allow her breaks and changed her parking space.

19. 18. In March 2020, the Plaintiff, MARIA SIMON, again requested accommodations as follows: work no more than 40 hours per week; work no more than 12 hours per shift; time for breaks to manage pain; time for breaks to elevate leg and manage swelling; and being able to park in the handicap spot.

19. Again, the Defendant, MCD, verbally granted each of these accommodations but frequently refused to allow her breaks and changed her parking space.

20. After the Plaintiff's accommodation requests in January 2020, February 2020, and March 2020, the Plaintiff, MARIA SIMON, was further subjected to a hostile work environment, which included, but was not limited to, being requested to work additional hours in excess of her accommodation, being subjected to criticism that her non-disabled peers were not subjected to and being subjected to disciplinary actions that her non-disabled peers were not subjected to.

21. For example, in June 2018, after notifying Director Gross of her knee condition, the Plaintiff received a one-day suspension without pay for inputting 4719 instead of 3719 as the house address. However, in April 2020, a non-disabled colleague input 4723, which did not exist, instead of 3723. This employee did not receive a one-day suspension without pay or any other disciplinary action.

22. As further example, in March 2020 the Schiller Park Fire Department issued a special instructions memorandum to dispatchers for calls between 1600 and 800 hours. On May 1, 2020, a non-disabled colleague was the call taker for a call that the memorandum would have applied to. The call taker did not apply the memorandum and sent it to dispatch. The Plaintiff, MARIA SIMON, was the dispatcher. She also failed to apply the memorandum. The Plaintiff,

MARIA SIMON, was subsequently terminated. Her non-disabled colleague is not believed to have been disciplined or was not disciplined to the extent of the Plaintiff.

23. On or about June 9, 2020, the Plaintiff, MARIA SIMON, provided the Defendant, MCD, a doctor's note requested that her hours be limited to 12 hours per day. The Plaintiff also verbally informed the Defendant of her doctor's recommendation that at some point, the Plaintiff would need a total knee replacement and would require additional accommodation.

24. On or about June 15, 2020, the Plaintiff, MARIA SIMON, was discharged from her employment at the Defendant, MCD.

25. Pursuant to the interagency agreement, the Defendant, MCD, was to be staffed with four employees on days and afternoons at all times and three on midnights.

26. When the Defendant, MCD, opened in 2017, it was staffed with fifteen full-time employees, three supervisors, and one part-time employee.

27. Since that time, Executive Director Gross has failed to maintain these or proper staffing levels for the Defendant, MCD.

28. For example, in 2018, one full-time employee was terminated and never replaced. Therefore, after that termination, the Defendant, MCD, was staffed with approximately fourteen full-time employees, three supervisors, and no part-time employees.

29. As further example, in October 2019, a full-time employee resigned. Thereafter, the Defendant, MCD, was staffed with approximately thirteen full-time employees, three working supervisors, and no part-time employees.

30. While the Plaintiff, MARIA SIMON, was on medical leave, the staffing level at the Defendant, MCD, was changed to approximately twelve full-time employees, three

supervisors, and no part-time employees.

### COUNT I - Violation of Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*

31. The Plaintiff, MARIA SIMON, incorporates and adopts paragraphs 1 through 30 as if set forth herein fully as paragraph 31.

32. At all relevant times, there was in effect in the State of Illinois the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* (hereinafter "ADA").

33. During the course of employment, the Plaintiff, MARIA SIMON, was an "employee" as defined by the ADA.

34. During the course of employment, the Defendant, MCD, was an "employer" as that term is defined by the ADA. In particular, the Defendant, MCD, employed fifteen or more employees, including the Plaintiff.

35. At all relevant times, the Plaintiff, MARIA SIMON, was a qualified individual with a disability within the meaning of 42 U.S.C. § 12101(2)(A), § 12102(2)(B), and § 12102(2)(C) based upon her previously described medical conditions.

36. At all relevant times, the Plaintiff, MARIA SIMON, had one or more impairments, as previously described, within the meaning of the ADA that substantially limited one or more of her major life activities.

37. The Plaintiff was regarded as having such impairment by the Defendant, MCD.

38. At all relevant times, the Plaintiff, MARIA SIMON, was qualified to perform the essential functions of her job within the meaning of the ADA.

39. While the Plaintiff, MARIA SIMON, was employed by the Defendant, MCD, she satisfactorily performed her duties with the Defendant.

40. Pursuant to the ADA, it is a civil rights violation for employers to fail to provide reasonable accommodations for employees with disabilities or discriminate on the basis of disability in all bases of employment, including discipline.

41. In violation of the Americans with Disabilities Act, the Defendant, MCD, committed one or more of the following actions:

    a. Failed to make reasonable accommodations to the Plaintiff in providing the accommodations requested by the Plaintiff's doctor's note which regarded the Plaintiff as disabled;

    b. Failed to make reasonable accommodations to the Plaintiff in failing to provide continuous accommodations;

    c. Failed to make any reasonable accommodation to the Plaintiff;

    d. Failed to engage in any or a timely, good faith, and meaningful exchange to determine an effective reasonable accommodation;

    e. Disciplined the Plaintiff on the basis of her disability or need for accommodation of a leave of absence;

    f. Terminated the Plaintiff on the basis of her disability or need for accommodation of a leave of absence;

    g. Disciplined the Plaintiff in retaliation for making a request to accommodate her;

    h. Terminated the Plaintiff in retaliation for making a request to accommodate her; and

    i. Was otherwise in violation of the Americans with Disabilities Act.

42. As a result of the discriminatory and retaliatory conduct of the Defendant, MCD, the Plaintiff, MARIA SIMON, has sustained the following and ongoing damages:

      a.      Loss of wages, benefits, and income from the time of her termination and ongoing;

      b.      Humiliation, embarrassment, and emotional distress damages and ongoing;

      c.      Attorneys' fees and costs for the prosecution of this action and ongoing;

      d.      Prejudgment interest; and

      e.      other losses to be determined.

43.    On February 17, 2021, the Plaintiff, MARIA SIMON, received a right to sue letter from the EEOC on this claim.

WHEREFORE, the Plaintiff, MARIA SIMON, prays for judgment against the Defendant, MUNICIPAL CONSOLIDATED DISPATCH, plus her costs of suit, statutory penalties, and attorneys' fees.

## JURY DEMAND

A Jury Trial is requested on all claims triable by a jury.

Respectfully Submitted,

_/s/ Diana C. Taylor_

Diana C. Taylor
Attorney for the Plaintiff

DIANA C. TAYLOR (4994471)
S.T. Legal Group
1020 Milwaukee Ave., Suite 335
Deerfield, Illinois 60015
(847) 654-9200
dtaylor@stlegalgroup.com